## ENOCH MORGAN'S SONS CO. *v.* WENDOVER *et al.*

*(Circuit Court, D. New Jersey. September 23, 1890.)*

TRADE-MARK—INFRINGEMENT.
    Complainant had a trade-mark in the word "Sapolio," used to designate a particular kind of soap. When persons called at defendant's store and asked for "Sapolio," their salesman would, without explanation, pass out a soap called "Pride of the Kitchen," on which these words were plainly marked, and receive the customary price. The wrappers used on the two soaps were entirely different, and the size and shape of the cakes also differed. *Held* that, though there was no use of the word "Sapolio" on the soap, and no resemblance in the packages, the transaction amounted to an infringement of plaintiff's trade-mark, and would be enjoined.

In Equity. On bill for injunction.
*Rowland Cox,* for complainant.
*Riker & Riker,* for defendants.

GREEN, J. This is a suit in equity to restrain the unlawful use of the trade-mark or symbol, "Sapolio." The bill alleges that the complainant is the assignee of the originators of the word "Sapolio," a word used to designate a scouring soap, which has for many years been widely known and recognized by the public as the trade-mark or trade-name of the complainant; that the complainant has a right to the exclusive use of this word-symbol in every lawful way; and that such exclusive use has been upheld by the courts, and admitted by all. The defendants are charged with selling publicly a scouring or sand soap, under, as, and for Sapolio, which is not Sapolio, and is not the manufacture of the complainants. The facts proved are that, on three or four occasions, certain agents of the complainant went to the store of the defendants, in Newark, N. J., and asked for Sapolio. The salesman of the defendant immediately delivered to the purchaser a cake of soap called

"Pride of the Kitchen," without explanation, and received the customary price. It is this class of transactions which the complainant insists constitutes infringement of its trade-mark or symbol. It is admitted that the soap designated as "Pride of the Kitchen" is enveloped in a wrapper wholly different from that used to envelop Sapolio, and that the shape and size of the cake also differs from the usual size of a cake of Sapolio. It is further admitted that the words "Pride of the Kitchen" are plainly printed in large and legible type across the wrapper enveloping that soap. Upon the argument, I expressed some doubt whether the proofs did anything more than show a case either of deception as between the buyer and the seller, or of an acquiescence, on the part of the purchaser, in the open substitution of the one soap for the other by the salesman; but, upon reflection, I am of opinion that the transaction constituted an infraction of the property rights of the complainant, and is actionable. It is perfectly well settled that a "trade-mark" is property. If so, any use of it by others than the owner or rightful possessor, if unauthorized, is unlawful. The property of the complainants in this trade-mark or symbol is not only not disputed, but clearly admitted, by the answer, and is as clearly established by the proofs. The law, then, is bound to protect the owner of this property in the use, and the exclusive use. Now, what did the transaction in the store of the defendants, as disclosed in the proofs, amount to? Simply this: When asked by the complainant's agent for a cake of Sapolio, the defendant's agent, in response, delivered a cake of Pride of the Kitchen, which, in effect, was an assertion that the cake delivered was Sapolio, the very identical soap which had been asked for. In other words, the act of the defendant's salesman was a sale of a soap not made by the complainants, as and for the soap of the complainant known as "Sapolio," and thereby constituted an assertion on his part that it was Sapolio. If acts speak louder than words, then this assertion was more positive and emphatic than if it had been spoken aloud. The result is that an article manufactured by A. has been successfully palmed off upon an innocent purchaser as an article manufactured by B., and as the article for which the purchaser made inquiry; and this has been accomplished by a deception arising from and based upon what must be held to be an unlawful use of a trade-mark or word-symbol, the right of property in which belongs solely to the complainant. That the act of the salesman in offering "Pride of the Kitchen" in response to a demand for "Sapolio" is, though done silently, a positively unlawful act, is clear. Its unlawfulness consists in an attempt to steal away the business of the complainant for the benefit of the manufacturers of "Pride of the Kitchen." It is clearly the object of the law of trade-marks to prevent this. In *Celluloid Manuf'g Co.* v. *Cellonite Manuf'g Co.*, 32 Fed. Rep. 97, Mr. Justice BRADLEY uses this language:

"It is the object of the law relating to trade-marks to prevent one man from unfairly stealing away another's business and good-will. Fair competition in business is legitimate, and promotes the public good; but an unfair appropriation of another's business, by using his name or trade-mark, or an

imitation thereof calculated to deceive the public, or in any other way, is justly punishable by damages, and will be enjoined by a court of equity."

The words, "unfair appropriation of another's business * * * in any way," are quite comprehensive enough to include the act which, in effect, represents Pride of the Kitchen to be the article demanded when Sapolio is asked for. Any act or thing done to induce the belief that the one article is in fact the other is unfair, and indeed unlawful; and this is the true meaning and intent of the acts of the defendant's salesman complained of. The case falls clearly within the principle that equity should prevent a party from fraudulently availing himself of the trade-mark of another, which has already obtained currency and value in the market, by whatever means he may devise for that purpose. The defendants had no right to represent, by word of mouth or by act, directly or indirectly, that Pride of the Kitchen was Sapolio, and yet this is what the acts of their agents amount to. Such acts should be restrained. They constitute false representations, which tend to mislead· the public, and divert custom from the one manufacturer to the other. Let an injunction issue, as prayed for. The question of costs is reserved.