**CITY MESSENGER OF HOLLYWOOD, Inc., a California corporation, doing business under the trade-name of City Messenger Air Express, Plaintiff-Appellant,**

v.

**CITY BONDED MESSENGER SERVICE, Inc., by change of name from City Bonded Messenger and Trucking Service, Inc., an Illinois corporation, City Bonded Trucking Company, Inc., an Illinois corporation, The Illinois Bell Telephone Company, an Illinois corporation, and the Reuben H. Donnelley Corporation, an Illinois corporation, Defendants-Appellees.**

No. 12046.

United States Court of Appeals Seventh Circuit.

Jan. 9, 1958.

Rehearing Denied May 22, 1958.

Harry G. Fins, Normand A. Cohen, Chicago, Ill., for appellant.

Eli Mullin, James E. S. Baker, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and HASTINGS, Circuit Judges.

DUFFY, Chief Judge.

Asserting jurisdiction by reason of diversity of citizenship, plaintiff filed a complaint in the District Court for the Northern District of Illinois, alleging unfair competition. After answer, certain defendants filed a counterclaim which eventually contained four counts. Each count was filed on a different date.

Count I of the counterclaim filed June 28, 1955, alleged unfair competition. Count II alleged fraud and deceit, and was filed June 28, 1955, but was later withdrawn. Amended Count II also alleged fraud and deceit, and was filed September 27, 1955. Count III was filed August 12, 1955 and alleged an infringement of trade-mark, the registration of which had been issued a few days previous thereto, to wit: on July 26, 1955. The defendant-counterclaimants rested their case on February 7, 1957, and Count IV alleging a breach of contract was filed the following day.

The District Court denied any relief to plaintiff and entered judgment in favor of the defendants on all four counts of the counterclaim. The judgment provided for an injunction restraining plaintiff and its officers and agents from using certain words in its name and advertising. The judgment also provided for an accounting of profits and damages, and a reference was made to a special master for determination of a) defendant-counterclaimants' damages; b) plaintiff's profits. The judgment also provided that defendant-counterclaimants were entitled to punitive damages and an award of treble profits and damages. The judgment further provided that defendant-counterclaimants were entitled to an award of damages for breach of contract and fraud and deceit, and were also entitled to recover $1,526.83 in repayment for services rendered and advances made by defendant corporation. There was also a provision that defendant-counterclaimants recover their attorney fees from plaintiff as well as their costs and disbursements.

In view of the award of punitive damages, treble damages and the assessment of attorney fees, it is necessary to analyze each count of the counterclaim to determine the applicable law. For reasons hereinafter stated, we hold that Counts I, II and IV are governed by the applicable law of Illinois; but that a part of Count III does state a federal claim.

Defendant-counterclaimants insist that Count I of the counterclaim asking damages for unfair competition is a federal cause of action governed by the Federal Trade-Mark Act (Lanham Act), 15 U.S.C.A. §§ 1051–1127. Apparently, at the time that Count was prepared and filed, the attorneys for defendant-counterclaimants were not of this view. An examination of the Count shows that it was based expressly upon diversity of citizenship. The first three paragraphs of Count I assert the diversity of citizenship of the parties to this action and that the matter in controversy exceeded, exclusive of interest and costs, the sum of Three Thousand Dollars. Furthermore, Count I was filed before claimants had a registered service mark. Count I expressly alleged an infringement of defendant-counterclaimants' "common law rights by using * * * a service mark dominated by the word City * * *." We hold that Count I does not assert a federal cause of action.

This Court is committed to the view that the claim set forth in Count I of the counterclaim for damages caused by unfair competition is governed by the law

of Illinois. Independent Nail & Packing Co., Inc. v. Stronghold Screw Products, Inc., 7 Cir., 205 F.2d 921, 926; Jewel Tea Company, Inc., v. Kraus, 7 Cir., 187 F.2d 278, 282; Radio Shack Corporation v. Radio Shack, Inc., 7 Cir., 180 F.2d 200, 202; Wilhartz v. Turco Products, 7 Cir., 164 F.2d 731, 733. Time, Inc. v. Viobin Corporation, 7 Cir., 128 F.2d 860, 862. We do not think that the Lanham Act changed this rule. We have been cited to no court authorities [1] that have held the Lanham Act has changed the rule long established and followed in this Circuit. On the contrary, the contention that the Lanham Act creates an independent ground for federal jurisdiction, and that a claim for damages for unfair competition in the United States between American citizens is governed by the Lanham Act, as argued by defendant-counterclaimants, has been expressly overruled in American Automobile Association, Inc. v. Spiegel, 2 Cir., 205 F.2d 771, 775; L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., 3 Cir., 214 F.2d 649, 654; Royal Lace Paper Works, Inc. v. Pest-Guard Products, Inc., 5 Cir., 240 F.2d 814, 818. We agree with these decisions.

■ Counts II and IV of the counterclaim seeking recovery for fraud and deceit and breach of contract, respectively, are common law causes of action. These claims are governed by the law of Illinois.

■ There is no basis under Illinois law for the assessment of treble damages or the payment of attorney fees based on claims contained in Counts I, II and IV of the counterclaim. In Patterson v. Northern Trust Company, 286 Ill. 564, 122 N.E. 55, 57, the court said: "At common law costs were never recoverable, and they can be recovered only in cases where there is statutory authority therefor. Any party claiming a judgment for his costs against his adversary must bring himself within the operation of some statutory provision, and courts have no power to adjudge costs against anyone on merely equitable grounds."

In the later case of Ritter v. Ritter, 381 Ill. 549, 46 N.E.2d 41, 43, the Court said: "The allowance and recovery of costs rests entirely upon statutory provisions and no liability for costs exists in the absence of statutory authorization." In Trust Company of Chicago v. National Surety Corporation, 7 Cir., 177 F. 2d 816, after quoting from Patterson and Ritter, we held that under Illinois law attorney fees could not be assessed against the losing party. See also Danville Building Association of Danville, Ill. v. Gates, D.C., 66 F.Supp. 706. The opinion in that case was written by Judge Lindley, and he stated at page 709: "I think it clear that the inevitable effect of this decision is that a federal court may no longer grant an equitable remedy in a diversity action where that relief is not available in the courts of the state, * * *"

Disregarding for the moment Count III, we hold that there was no authority in the District Court to assess treble damages or to award attorney fees as to the claims contained in Counts I, II and IV, and in doing so, the Court committed reversible error.

■ Count III of the counterclaim was filed August 12, 1955, eleven weeks after the commencement of the instant suit, and seventeen days after the date of the registration of defendants' mark. Paragraph 1 thereof re-alleged paragraphs 1, 2 and 3 of Count I of the counterclaim. By such reference diversity of citizenship of the parties was set forth and also the amount in controversy. Paragraph 2 of Count III then alleges an additional jurisdictional ground as follows:

"2. As an additional ground for jurisdiction of this Court, Defendant alleges that it is based upon in-

1. Defendant-counterclaimants did cite Steele v. Bulova Watch Company, Inc., 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 252. The claims there asserted were for acts of trade-mark infringement and unfair competition consummated in Mexico. The case is not applicable to the situation we are here considering.

fringement of its service mark used in commerce among the several states of the United States *and* upon infringement of said service mark duly registered in the United States Patent Office in accordance with the Trade Mark Act of July 5, 1946."

This paragraph can properly be construed as asserting jurisdiction under a federal law. 28 U.S.C. § 1338(b) provides: "The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trademark laws."

 Count I alleges unfair competition by plaintiff with reference to defendant's unregistered mark, and the principal emphasis of Count III is as to the registered trade-mark. With such overlapping of claims we hold that the allowance for damages, if any, under Count I should extend no further than July 26, 1955, the date of the registration of defendants' mark. A cut-off at this point is necessary to prevent a duplication of compensatory damages, if any are awarded. On the other hand, damages, if any, for the infringement of defendants' registered trade-mark, and the related claim for unfair competition, cannot extend further back than July 26, 1955.

In Strey v. Devine's, Inc., 7 Cir., 217 F.2d 187, 189, we said: "Thus, the District Court's jurisdiction of plaintiff's claim of unfair competition existed to the limited extent that it is 'related' to his claim of trade-mark infringement. Federal jurisdiction was only obtained in this case by reason of the registration of plaintiff's trade-mark. The principle involved is well stated in Landstrom v. Thorpe, 8 Cir., 189 F.2d 46, 51, 26 A.L. R.2d 1170 ' * * * For such a claim to be "related" to a case arising under the trade-mark law within the meaning of the statute "it must appear that both federal and nonfederal causes (of action) rest upon substantially identical facts".' " In the same case, we also said at page 189 of 217 F.2d: "It follows that the District Court did have jurisdiction as to any acts of the defendant which may have constituted unfair competion providing that same occurred on or after September 9, 1952, the date of the registration of plaintiff's trade-mark."

Upon a retrial of this case, consideration should be given to 15 U.S.C.A. § 1117, which provides:

"When a violation of any right of the registrant of a mark registered in the Patent Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1113(1) (b) [1] of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty."

Also pertinent on the question of damages is 15 U.S.C.A. § 1111, which provides that unless a registrant gives notice that his mark is registered, no pro-

---

1. So in original. Probably should read "1114 (1) (b)."

ceeds or damages shall be recovered unless the alleged infringer had actual notice of the registration.

■ If, on a retrial of this cause, a finding of unfair competition is made, it does not necessarily follow that the prevailing party is entitled to a monetary award or an accounting of profits. An injunction may satisfy the equities of the case. Radio Shack Corporation v. Radio Shack, Inc., 7 Cir., 180 F.2d 200, 207; Consumers Petroleum Co. v. Consumers Co. of Illinois, 7 Cir., 169 F.2d 153, 163.

Count IV of the counterclaim was filed the day after defendant-counterclaimants had concluded their testimony. Leave to file this count was granted by the District Judge on the theory the amendment was to conform to the evidence. Rule 15(b) Federal Rules of Civil Procedure, 28 U.S.C. Apparently, no opportunity was afforded to the plaintiff to answer Count IV nor is it clear that any request to file or present an answer was made. Also, there was no request for a continuance upon the part of plaintiff.

In substance, Count IV alleged that on or about September 7, 1954, at Los Angeles, defendant City Bonded Messenger Service, Inc. and City Bonded Trucking Company, Inc. "* * * offered to purchase for $12,500.00 an undivided one-half interest in all of the assets owned by and in the name of the Plaintiff * * * including the good will of the business attaching thereto and the right to engage in the business of an air freight forwarder under Civil Aeronautics Board letter of registration No. 163."[2] The Count alleged acceptance by the plaintiff of the offer to purchase but that there was a failure to deliver to defendants a one-half interest in all of plaintiff's assets "including the good will * * * and the right to engage in the business as an air freight forwarder under Civil Aeronautics Board Letter of registration No.

163." Defendant-counterclaimants alleged damages of $16,526.83.

Although amendments to conform to the evidence may properly be allowed under many situations, we think the issues in Count IV should be determined only after pleadings defining the issues have been filed and the parties have had adequate opportunity to offer evidence pertaining thereto.

■ One other matter pertaining to Count IV may properly be decided at this time. Plaintiff contends that the procedure whereby the trial court allowed a new cause of action after defendant-counterclaimants had rested their case, deprived plaintiff of his right to a trial by jury as guaranteed by the Seventh Amendment to the Constitution of the United States. We do not agree. Plaintiff could have asked a jury trial on Counts II and III but did not do so. The evidence which was the basis of the later-filed Count IV was pertinent in some respects to the other Counts. When defendant-counterclaimants asked leave to file Count IV, plaintiff made no objections that it was being deprived of a jury trial. Under all the circumstances, we think that the right to have a jury trial on the issues raised by Count IV of the counterclaim was waived by the plaintiff.

■ Over objections by plaintiff, the trial court received testimony concerning a claim of $1,526.83, "for services rendered and advances made on behalf of Plaintiff by Defendants." This claim was not set forth in the pleadings. Nevertheless, the District Court made Finding of Fact 35 favorable to the defendants on this point and the judgment provided that $1,526.83 should be recovered by defendant-counterclaimants. This particular controversy was the subject of a separate suit between the parties herein which was commenced in the Municipal Court of Chicago by the defendants herein, and was identified as Case No. 55 M 2286. On the first day of the

---

2. The letter of registration from the Civil Aeronautics Board to plaintiff was dated May 21, 1954, effective May 22, 1954, and by its terms was not transferable.

trial in Municipal Court the parties negotiated a settlement and the action was dismissed by consent with the proviso it was subject to reinstatement in the event the terms of the settlement were not fulfilled. Although it is here suggested the settlement terms were not carried out, we see no justification for further complicating the issues herein by interjecting into this suit issues which were the subject of a separate lawsuit. If defendant-counterclaimants were entitled to relief as to those issues, it should have proceeded in the Municipal Court. Finding of Fact 35 has no proper basis in this record, and paragraph 5 of the judgment order is reversed with directions that same be vacated.

The trial court found that the institution of this suit was vexatious and for the purpose of harassment. For some reason, plaintiff did not appeal from the judgment dismissing its claim. We, therefore, do not comment upon the merits of plaintiff's suit except insofar as the claimed vexatious conduct may be the basis on which the trial court awarded punitive and treble damages and assessed attorneys' fees. We have hereinbefore decided there was no authority in the trial court to award such damages and to assess attorney fees as to Counts I, II and IV. We now decide that no such damages should have been awarded as to any Count of the counterclaim, even if it might be held that Illinois law permitted such procedure as to Counts I, II and IV.

█ It would over-extend this already lengthy opinion to set out in detail why we think plaintiff was entitled to its day in court without risking punitive damages and assessment of attorney fees. After a reading of the extensive record before us, we are unable to ascertain any basis for the finding that the suit was vexatious and brought for the purpose of harassment.

Under all the circumstances of this case, we think the interest of justice will best be served by reversing the judgment as to all four Counts of the counterclaim, and remanding the cause for a new trial. We are also of the view that there should be no occasion to refer any of the issues to a master.

Reversed and remanded.

FINNEGAN, Circuit Judge, concurs in the result.

On Petition for Rehearing

DUFFY, Chief Judge.

Defendants urge six principal grounds for a rehearing. We have carefully examined these contentions, but find none sufficient to grant the petition for rehearing. We shall discuss only three.

█ We held the issues as to Count IV which count was filed after the conclusion of the testimony, should be determined only after pleadings defining the issues have been filed, and the parties have had adequate opportunity to offer evidence pertaining thereto. Defendant-counterclaimants insist the issues as to Count IV were tried by the implied consent of the parties. To have any kind of consent, there must be knowledge. It is apparent that the claim for breach of contract contained in Count IV occurred to counsel for counterclaimants after he had rested his case. Under the circumstances, neither plaintiff nor counterclaimants tried the issue by implied consent.

Counterclaimants insist that in our opinion we refer to several questions which were not properly before us stating: "No appeal was taken from the district court's findings and judgment that plaintiff infringed defendants' registered mark and unfairly competed with defendant-counterclaimants." The short answer is that plaintiff appealed from the entire judgment.

In our original opinion we stated that there was no authority in the district court to assess treble damages or award attorney's fees as to Claims I, II and IV. This is correct but we further said: "and in doing so, the Court committed reversible error." The original opinion should be modified so as to read "and in

538

doing so, as to Count I the Court committed reversible error."

The petition for rehearing is Denied.

FINNEGAN, Circuit Judge.

I would allow a rehearing and for that reason disavow all that is said by Chief Judge DUFFY "On Petition for Rehearing."